**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ALFONIA L. BOSKIT,**

      **Plaintiff,**

**vs.**                                              **CASE NO. 1:05CV196-MP/AK**

**MICHAEL J. ASTRUE,[1]**

      **Defendants.**

                                       **/**

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security

(Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed

under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and

determinations of the Commissioner are supported by substantial evidence; thus, the

decision of the Commissioner should be affirmed.

**A.**      **PROCEDURAL HISTORY**

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g)

Plaintiff filed an application for DIB on September 18, 2002, alleging a disability

onset date of August 10, 2002, because of asthma, hypertension, cardiomegaly,

chemical allergies, and multiple hospitalizations.  Plaintiff petitioned for a hearing before

an administrative law judge (ALJ), who conducted a hearing on February 7, 2005, and

entered an unfavorable decision on July 8, 2005.  The Appeals Council denied Plaintiff's

request for review, thus making the decision of the ALJ the final decision of the

Commissioner.  This action followed.

B.      **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has asthma and congestive heart failure, which are

severe within the meaning of the Social Security Act, but that these impairments do not

meet the requirements of the listings.  (R. 13).  The ALJ found Plaintiff's allegations not

entirely credible because the poor control of her hypertension is due primarily to not

taking her medication as prescribed.  (R. 15).  This, in the ALJ's opinion, has also

caused her multiple hospitalizations.  (R. 16).  Tests show a mild to moderate

cardiomegaly, but her chest pain is not cardiac in nature.  Further, her asthma

precludes her from concentrated exposures to dust, fumes and irritants, but she has no

other exertional or nonexertional limitations that would prevent her from working a range

of light work.  (R. 16).  Using the grids as a framework for decision, the ALJ finds that

she has the exertional capacity to perform substantially all of the requirements of light

work and is therefore not disabled.  (R. 17).  She retains the capacity to adjust to work

that exists in substantial numbers in the national economy.  (R. 17).

C.      **ISSUES PRESENTED**

Plaintiff argues that the ALJ failed to meet his burden of showing that there are significant jobs which Plaintiff can perform; the ALJ erred in failing to consult a vocational expert, particularly the ALJ should not have relied upon the grids to determine whether there were significant jobs that Plaintiff could perform and the ALJ should have consulted a vocational expert to determine whether Plaintiff's frequent absenteeism would prevent her from working; and the ALJ failed to properly weigh Plaintiff's subjective complaints of pain and medication side effects.

The Commissioner responds that the ALJ properly considered her credibility by noting that she had not sought any medical treatment from September 2002 to January 2005, that she told Dr. Chodosh she could perform all activities of self-care, that she continues to smoke a pack of cigarettes a day, and has been non-compliant with her hypertension medications.  Insofar as she alleges pain, the medical records do not support cardiac pain, rather she seems to have musculoskeletal pain which does not preclude her ability to perform a full range of light work as set forth by Dr. Chodosh. There is nothing in the record to support her allegations of continued abdominal pain, which appears to have been resolved with an appendectomy.

The Commissioner argues that Plaintiff's frequent hospitalizations are the result of using the emergency room rather than a primary care physician and involved an overnight stay only 4 times in over 2 years.

Finally, the Commissioner argues that the ALJ properly used the grids to reach his decision that she was not disabled because dust, fumes and irritants do not limit her ability to find work beyond a minimal impact because most jobs do not involve excessive amounts of these things.  See SSR 85-15.  The ALJ found that she should

avoid concentrated exposure, and only if he had found that she should avoid all or

nearly all (excessive) exposure would an expert be needed to identify those jobs.

Plaintiff filed a rebuttal memorandum arguing that Plaintiff is indeed precluded

from excessive exposure and based on SSR 85-15 this case should be remanded for

vocational expert testimony.  Further, Plaintiff contends that her absenteeism is

sufficient to warrant expert testimony.

The issue thus presented is whether the Commissioner's decision that Claimant

is not disabled is supported by substantial evidence in the record and decided by proper

legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The

Commissioner's decision must be affirmed if it is supported by substantial evidence and

the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422

(11th Cir. 1997).  Findings of fact by the Commissioner which are supported by

substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397,

1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703

F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the

evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86

F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence

supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624

(11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d

227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the

Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v.

Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's

failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed

requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To

qualify as a disability the physical or mental impairment must be so severe that claimant

is not only unable to do his previous work, "but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Emergency room visit of August 16, 2002, for respiratory failure, which was called an asthma attack, treated with corticosteroids, and she was discharged home on August 18, 2002. (R. 116-120). The chest x-ray showed improvement from previous film with almost complete resolution of the congestive heart failure. (R. 118).

Emergency room visit of August 29, 2002, for difficulty breathing, patient reporting cigarette smoking x1 pack per day, some alcohol and recreational drug use, she was admitted with acute respiratory failure. Chest x-ray showed congestive heart

failure, and blood pressure was elevated.  Her conditions improved and she was released on September 4, 2002, with a follow up visit suggested with Dr. Hunt in two weeks.  (R. 99-114).

Emergency room visit of April 11, 2003, for chest pain.  (R. 138).  She had been out of her medication for 3 days and experienced chest pain and elevated blood pressure.  She came to the emergency room and began receiving her medication which relieved her symptoms.  (R. 138).  She told the physician she continued to smoke and had no primary care physician.  (R. 140).  One of the diagnosis upon discharge was noncompliance.  (R. 138, 146).

Emergency room visit of December 30, 2003, for chest pain.  (R. 201).  She was completely out of all her medications and had been "for some time."  (R. 201).

Emergency room visit of January 19, 2004, for chest pain, which was determined to be chest wall pain, not cardiac in nature.  (R. 192-200).

Treatment notes with Dr. Feiz dated January 23, 2004, show that Plaintiff was seeking follow up treatment following her emergency room visit previously for chest pain.  (R. 225).  She was to return in one week.

Admission of March 4, 2004, after Plaintiff had difficulties taking a stress test and had a "malignant" hypertensive episode "with component of noncompliance," resulting in her admission to Intensive Care with critical blood pressure levels.  (R. 212).  She admitted to not taking her medication "sometimes," and she was counseled extensively by the doctor on the importance of taking her medications, diet and exercise.  (R. 212, 213).  Results of the myocardial study conducted at this time were "likelihood of significant coronary disease is low."  (R. 214).

Emergency room visit of August 18, 2004, for flank and stomach pain.  (R. 162).

She had again run out of medication for almost a week, which likely triggered the

episode requiring her hospitalization.  (R. 174, 176).

Emergency room visit of September 8, 2004, for chest pain.  (R. 178). X-ray

showed "borderline cardiomegaly," and she was told to quit smoking.  (R. 189-190).

Emergency room visit of December 10, 2004, and subsequent admission for

abdominal pain.  (R. 231, 242).  She was noted to have a luteum (ovarian) cyst and her

hypertension was deemed to be the result of non-compliance and her medication was

changed to facilitate her compliance.  (R. 232).

Emergency room visit of January 2, 2005, for asthma, chest studies were mostly

normal.  (R. 236-241).  Plaintiff was admitted for treatment and discharged on January

7, 2005.  (R. 259-356).  She was diagnosed with acute bronchitis and asthma

exacerbation.  (R. 260).  She improved with medication and was released with

instructions for follow up care in one month.  (R. 260).  She continued to smoke.  (R.

270).  Chest x-ray and EKG were "essentially unremarkable."  (R. 276).

For a summary of her hospitalizations at North Florida, see List of Patient Visit

History at North Florida Regional.  (R. 229-230).

Consultative examination by Dr. Lance Chodosh dated January 14, 2003:

In my opinion, and based only on objective evidence: The claimant is able
to see, hear, and speak normally.  She is physically able to walk and stand
normally.  She is physically able to sit in a normal fashion.  She is able to
bend, lift, carry, squat, kneel, and crawl.  She is physically able to handle
objects of size and weight appropriate for her size, age, and bone
structure.  She is able to travel.  She is able to comprehend and follow
directions, and is able to relate normally to others.  (R. 128).

His range of motion examination was normal.  (R. 129).

Plaintiff reported to Dr. Chodosh that she is not currently under the care of a physician.  (R. 125).

Plaintiff saw Dr. Hensley twice, once in 2001 and then on June l9, 2003, where she presented non-compliant with her medications because of cost and an apparent lack of understanding as to the urgency of taking her medications.  (R. 156).  She was current on the pain medication, but her other medications appeared old.  (R. 156).  The doctor started her on hypertension medication, with plans to recheck her in a week with the possibility of adjustments.  (R. 156). [there are no other records from this source, so apparently plaintiff did not follow up as advised]

A Residual Functional Capacity Assessment dated August 27, 2003, found her capable of all the exertional requirements of light work with the exception of climbing due to her hypertension and limited to moderate exposure of dust, fumes, etc., because of her asthma.  (R. 130-137).

## F.    SUMMARY OF THE ADMINISTRATIVE HEARING (held February 7, 2005)

Plaintiff was 44 at the time of the hearing and had completed the twelfth grade.  (R. 360).  Her work experience has been as a maid.  (R. 360).  She quit work in 2002 because of her asthma and going "back and forth in the hospital."  (R. 360).  She stated that she was taking her medication, but it was not working.  (R. 361).  She also complains of chest pains.  (R. 363).  She claims to have two treating physicians that she sees twice a month if she's not in the hospital.  (R. 366-367).  She does nothing much during the day and is waiting on test results to find out what is wrong with her.  (R. 371).

## G.    DISCUSSION

At step five the Commissioner may in certain cases rely upon the grids to carry his burden of proving that there are jobs which a claimant can do despite her inability to perform her past relevant work.  The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level."  Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992).  See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).

The Court has read the medical evidence of record and agrees with the finding of the ALJ that Plaintiff is limited to light work compromised only by the restriction from work requiring concentrated exposure to dust, fumes or other respiratory irritants, and therefore, use of the grids is appropriate and renders a finding of "not disabled."  The record does not support a finding of other non-exertional impairments that significantly limit her basic work activities that would require the testimony of a vocational expert and preclude the use of the grids.  See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); see also Welch v. Bowen, 854 F.2d 436, 439-440 (11th Cir. 1988) (Where use of the grids is appropriate, the Commissioner need not make specific findings as to the availability of particular jobs that exist in substantial numbers in the national economy).

The medical evidence shows, as the ALJ found, that Plaintiff has hypertension and asthma, which become severe from her continued smoking, lack of compliance with her medication, and her frequent hospitalizations are the result of her using the emergency room when her conditions become acute rather than consistent treatment

from a primary care physician.  There are no records of regular treatment, no follow up

as suggested by doctors treating her on an emergency basis, and numerous instances

of non-compliance despite her protestations at the hearing that she takes her

medication regularly.  Each hospital visit resulted in marked improvement as soon as

medication was administered.  There is nothing in the record to support Plaintiff's

allegations that the medications did not work or that the doctors did not know what was

wrong with her.  It is clear from reading the record that Plaintiff has two severe

conditions, as the ALJ found, asthma and congestive heart failure, for which medication,

diet and exercise were prescribed and had been found to manage her symptoms when

used as directed.  Plaintiff had been counseled extensively that her conditions,

particularly hypertension could not be managed by infrequent or inconsistent use of her

medications.  She had also been counseled that smoking was absolutely not in her best

interest and exacerbated both conditions.  Dr. Chodosh performed a complete

examination of Plaintiff and found no exertional limitations at all, and the non-examining

physician who prepared a residual functional examination agreed that she could perform

all exertional requirements of light work, with the exception of jobs requiring exposure to

respiratory irritants.  As the Commissioner provided with its memorandum, (SSR 85-15),

the Administration does not consider this limitation to require a vocational expert to

testify because most jobs do not expose persons to such environmental elements.

Thus, the undersigned is of the opinion that the ALJ's findings are supported by

substantial evidence.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this 5th day of April, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**